Call case pamphlet. Case number 317-0029, people of the state of Illinois, athlete by Don Duffy versus one 2014 GMC Sierra, Michael Sheelan, a talent by Kevin Sullivan. Please proceed, counsel. If it may please the court, Mr. Duffy. Your Honor, my name is Kevin Sullivan. I represent Michael Sheelan. He is the claimant in this case. And I suppose theoretically I also represent the 2014 GMC Sierra truck. It is under the unique concept we're dealing with the defendant in this situation. This case emanated out of an incident that occurred February 29, 2016, in which a John Mark Folger was arrested for driving under the influence of drugs. On that date, John Folger, who along with Michael Sheelan, although not living together, but they each lived in a smaller town, Havana, Illinois. And the title holder of this vehicle, very nice vehicle at that, was Michael Sheelan. He was the former son-in-law of John Mark Folger. Mark Folger was actually purchased or put up money for this vehicle at a time when he was not able to work and he was going through a worker's compensation case due to injuries he received from his employer, while in the scope of his employment at Amherst. Michael Sheelan, his at this time former son-in-law, took very good care of him, did a lot of errands, and a number of things. And part of the remuneration for that was that Mark Folger purchased this vehicle for Michael Sheelan, for his personal use, as well as for helping out John Folger from time to time. On this particular date, John Folger asked Michael Sheelan, record owner, title owner of the vehicle, permission to use the truck that day to drive to Pekin, Illinois to purchase some fencing for his property. So John Folger and his companion, Wendell Stevens, drove together to Menard's department store, or box store if you will, in Pekin and purchased a fair amount of, I think what was ultimately picket fencing. It was placed in the back of the vehicle, and from there they went to, I'm sorry, Folger and Stevens went and picked up some lunch at a, I guess we'd call it a tavern, in the area of South Pekin or Manitou, close by. From there, Wendell Stevens requested they drive to Peoria, which was the opposite direction. So Folger drove the subject vehicle. Stevens was the passenger. They drove to a location in the south side of Peoria, and it's there, it is believed, that Stevens went into a house alone, purchased heroin, came back out. The next thing that happened was they both had used heroin. John Folger was driving and came to a stop at an intersection because he was unconscious. He was ultimately arrested for driving under the influence of drugs. Peoria County State's Attorney, in addition to prosecuting him for driving under the influence of drugs, which was a Class A misdemeanor, and I think it's important based upon the arguments asserted by opposing counsel, Class A misdemeanor being the top fine being $2,500, but in addition to the DUI prosecution, Peoria County State's Attorney initiated forfeiture proceedings under the Illinois Drug Asset Forfeiture Act. They alleged the vehicle was used to facilitate the use and possession of heroin in this particular case. I also think it's important to note that John Folger, nor anyone else, was prosecuted for any controlled substance offense as a result of this incident. The evidence also showed that this vehicle was the claimant's, Michael Sheldon's, only vehicle. He used it from time to time to run errands, to do things. He looked for work with this vehicle, and it was his to use it as he saw fit, as he was the owner, and it was somewhat his reward for helping out Folger. Sheldon testified, and the record would reflect, that he never suspected Folger would use any controlled substance. Folger was not much of a drinker, had no reason to believe that the vehicle would be used, or Folger would get a DUI on this particular occasion. Sheldon was not present on this occasion. In our defense, we asserted, in our response, I guess our answer, we asserted initially, I believe it was three defenses, but really it narrowed down to two. Was Michael Sheldon the innocent owner in this situation? I think it's important to throw out two principles of law relative to forfeitures at this time. The first one is the law disfavors forfeitures, and statutes that provide for the remedy of forfeiture must be strictly construed. I'll come back to that shortly. In this case, the state believed, and the trial court obviously believed, that really Michael Sheldon was not an innocent owner because he did not have a real vested stake in this vehicle, since he wasn't the one that purchased it. We established in the subsequent trial court proceeding that the value of this vehicle approximated $41,000. John Folger, who testified, and the court did not find credible, indicated he put up $15,000 in cash for this vehicle, although the truck was of a much greater value. In this situation, this was the only conveyance, this was the only vehicle that Sheldon had. Sheldon did not know, did not participate, did not anticipate that the vehicle would ever be used in this situation, and because of the unauthorized and unexpected actions of John Mark Folger, he lost his vehicle when he wasn't present, did not consent to any sort of illicit use of the vehicle, and what have you. If I could, let me ask you a question. Obviously, the state argued that this other fellow was the owner of the vehicle. So does that leave a question of fact as to who's really the owner of this vehicle, notwithstanding the registration? I don't think there's a question as to who is the owner, and I think there's no question it was Michael Sheldon's only vehicle. I think the question is, was he holding the vehicle for some other reason, and under the statute, was he, I mean, de facto-wise, he was the owner. But was this really a vehicle put into his name, I think is the issue, for other reasons? And there was some evidence presented on the record, although again, Folger was not found credible, that Folger had put it in Sheldon's name because he had a tax problem or because he had a workers' compensation. He said that apparently when he was under the influence of the heroin at or near the time of his arrest, going way, way back to February 29, 2016. Ultimately, upon being questioned in court, Folger testified he did not have any tax problems. There was nothing brought forth by the state that he did. He did have a workers' compensation suit, but why he would put it in somebody else's car was never explained by the state. Or, in our part, it was, the reason being was, again, remuneration for all the work that Sheldon had done for him. And, for a time, Folger was not allowed to drive because he was on a fair amount of prescription medication as a result of the injuries he sustained in the course of his employment. The second argument put forth is that the taking of this vehicle violates the Eighth Amendment in that it is an excessive fine when you look at the gravity of the offense. And I alluded to that earlier in my remarks. The punishment under constitutional principles should be graduated and proportionate to the nature of the offense. A forfeiture is considered excessive if it is disproportionate to the gravity of the offense. Now, this was brought about in a motion to set aside the judgment that was filed later, but I primarily filed it based upon the Fifth District case that came out that received a lot of publicity involving the 2010 Harley-Davidson case. And I always thought, for many, many years, that the Eighth Amendment did apply to these situations. And I based that upon the U.S. Supreme Court case, Austin, I believe, United States v. Austin, that said the Eighth Amendment does apply to forfeitures. This 2010 Harley-Davidson case out of the Fifth District really seemed to put this more front and center on the map in Illinois. And when you look at that case, and you look at the facts of that case, in which that court found that forfeiture was unconstitutional and was, in fact, an excessive taking, when you compare the facts of that case to the circumstances and facts of this case, I believe that we have established that this is an excessive fine, and the Eighth Amendment should prohibit the taking of this 2014 GMC Sierra Denali model vehicle. Let me, that Harley-Davidson case is in the Supreme Court right now. It is pending, and as I looked at it. They argued it already. It's been, I don't know if it's been argued, Judge, but I looked, excuse me, Justice Schmidt, but I looked as of this morning. Leave was granted in January of 17 by the Supreme Court, but there's not been a decision made on that case. Do you think it's going to control the outcome of this case? I don't think it necessarily should, based upon the fact that the principle has already been introduced that the Eighth Amendment does apply. It could give us some guidance, but I don't think it's going to be completely dispositive. But I do think that the argument being made regarding the decision in the Fifth, when you compare the facts of each case, is very persuasive in this situation and would suggest that the Eighth Amendment would, should prohibit the taking of this vehicle in this particular situation. If you look at the three-part test that the courts expected to look at regarding the Eighth Amendment, the gravity of the offense, again, we're dealing here with a Class A misdemeanor. This is a DUI. The fact it was a drug doesn't make it any more serious or less serious than if it was DUI alcohol. Our legislature decided this was a Class A misdemeanor under these circumstances. Mark Fodor was found guilty of that offense. However, there were no felony charges brought under the Controlled Substances Act, and they certainly could have tried to bring those, whether there were grounds to do that or not. Normally, where you don't have somebody that possesses, at least in my experience, the physical specimen of the contraband, in other words, a bag of heroin or a vial of heroin or whatever, and they use it only, it's more difficult to prove. The second test, the second element of the test is, was the property an integral part of the commission of the crime? That's a two-edged sword. It probably could be if you look at the fact that this was a DUI, although it's not known how far the vehicle would have driven, where the consumption or the ingestion or the injection of heroin occurred. But if you look at it in terms of a controlled substance offense, although not filed, this property was not, this vehicle was not an integral part of that offense. And the last element is, was the criminal activity involving the use of the vehicle extensive in both time and space? There's no evidence to suggest that. It was all contemporaneous, and it appeared that that vehicle traveled a very short distance. Once my client's colleague actually procured the heroin from a house, an unknown house, and at the time, unknown to John Mark Fuller. Two minutes, please. Thank you. Let me ask you this. For a forfeiture, does there have to be an underlying criminal conviction, or could a prosecutor say, well, in lieu of prosecuting this person for this offense, we'll just seek forfeiture proceedings against the vehicle? The law as it existed when this case emanated did not require a conviction. The new legislation that's proposed does require a conviction under, in this case, the Controlled Substances Act, not the DUI Act, but under the Controlled Substances. And that's proposed legislation because there's a movement afoot that there's been a lot of abuses in the forfeiture code, the Forfeiture Act, and the taking of property by the state from people otherwise so affected. But when you compare the 2010 Henry Davidson case just on three simple points, this case I'm arguing today, Your Honors, involves a misdemeanor. That case involved a felony. In this case, the true owner, the title owner, was not present or consented to the use of the vehicle. In the Henry Davidson, the owner was present, consented, and was riding on the motorcycle when her husband was arrested for a felony. The value of this vehicle we've established is $41,000. The value presented in that case of the motorcycle was $35,000. There is new, not just legislation, but the new law in Illinois now provides that the court must consider, it's called proportionality, and essentially it's codified or codified that the Eighth Amendment does now apply in this situation. It did not exist when this case started. I believe it did go into effect at the beginning of this year according to what my researchers found. I have nothing further. I have no other questions. I want to thank everybody for their time. Thank you, Counsel. Counsel, you may proceed. Good morning, Your Honors. The first thing I'd like to address is that I have a disagreement with what the evidence was at this hearing. I heard counsel refer several times to the fact that this truck was worth $40,000. That is not in this record. There is no evidence in this record that this truck was worth $40,000. He attempted to establish that by appending to his brief a photocopy of a newspaper ad showing one Sierra GMC for sale at some dealership for $40,000. That is not part of this record. The only thing in this record is that Mr. Folder testified that he purchased this truck for $15,000. Nobody disputes the fact he purchased the truck. Counsel talks about the title to this truck. There is no copy or original of a title in this record. There is no original or a copy of a registration in this record. Mr. Folder did admit that he purchased the vehicle and put it in Mr. Schelen's name because he was having problems with the workman's comp case. He wasn't supposed to be driving. If he put the vehicle in his name, then he was afraid that the workman's comp would be denied because it would be somewhat proof of the fact he was able to drive a truck. In November of 2016, Mr. Schelen filed a petition for release from the judgment after the bench drown. The petition alleged that the value of the vehicle was $41,000. Yes, but it was never established. There's no evidence to that. That may be what he appended that photo copy to. Okay, but there was a hearing on that but not testimony. Correct. And the hearing after that petition was denied. Yes. And so that's what you're referring to as saying there was no evidentiary hearing. Well, there was an evidentiary hearing in Mr. Folder. In the year of the bench drown. Right. The petition overturned that. Right. But there was no hearing on that. There was never any evidence submitted that would... On the valuation of $41,000. Correct. That's correct. Well, so answer me this one. This is a DUI, right? You know what? I don't know. That's not part of this record either. You don't know what the... I don't know what Mr. Folder was charged with or convicted of. Because this proceeding involved Mr. Sheldon, who filed the 214-01 petition to try to get this truck returned to him. Now, Mr. Folder, who purchased the truck... It doesn't matter why the truck was in Mr. Sheldon's name. I mean, the court made a finding that it was titled in his name. But for the purpose of this proceeding, does the why matter? I think it might. I think it goes to credibility. About who the true owner is? Yes. But the order, as entered, makes a finding that it's titled in Michael Sheldon's name. So, I mean, if he is not the owner... I mean, if the judge is finding that he's not the true owner... That's what the judge found. He found the state had probable cause to take this vehicle in a forfeiture proceeding, and he found that Mr. Sheldon failed to establish the exemption that he was an innocent owner. But is it the innocent ownership that he would have not known what it was going to be used for? I mean, my understanding is that, you know, as I read this order, that she finds in paragraph F, though Mr. Sheldon testified he had no reason to believe Mr. Holder would use the truck for criminal misdeeds, the court is completely skeptical of his testimony. I guess is, you know... To me, that is what she is using as the basis for the forfeiture as a non... finding that he didn't meet his burden with his affirmative defenses. Does it have anything to do with how he got this vehicle titled in his name? Because whether or not it was because of a worker's comp case or IRS, what would that have to do with using it for drugs? Well, those two things aren't connected, but the evidence is that Mr. Holder purchased the truck, okay? The truck was in his... he kept in his garage. He had the keys to the truck. He paid for the insurance on the truck. He licensed the truck. He paid for the license... he paid for the service on the truck. He never had to ask permission to use the truck, and the day that he committed this offense, he went out, had the keys, got in the truck, and took off. The only evidence... and he told the police on separate occasions that, yeah, he may have registered this truck in Mr. Sheldon's name. Again, didn't see any documentation that the truck was registered to him, and there is no copier of a title in this record, okay? You say that the judge said this, but you know what, there was no evidence presented to this judge that there was a title in Mr. Sheldon's name. Item four, the evidence provides as follows. B, it is titled in Michael Sheldon's name. So she must have thought there was enough evidence. She must have thought there was, but you know what, there's no evidence in there. There's not any evidence that... if he paid $15,000 for this truck, put $15,000 down, if the truck indeed was valued at $40,000, is there a loan holder out there someplace? Don't know. That was never discussed either. But Mr. Folder tells the police on separate occasions that he, it's really his truck. He indeed did buy it for Mr. Sheldon because he was having some financial problems with either workman's comp or tax. And then he went down to the police department on three separate occasions to try to get the truck released to him because he owned the truck. He wanted that truck back. That's, I think, what I was getting at is that... So the order really is a finding that Michael Sheldon was not really an owner. Correct. But any interest that he may have would be forfeited. He didn't overcome... I just spent a lot of time about how he is entitled and so your explanation helps me with that issue that I have. No, thank you. If you would put the ownership aside, Mr. Sheldon spent a lot of time talking about Eighth Amendment issues here. So what say you? Well, according to that case, I have to admit that perhaps anything looked at  could be viewed as excessive under the Eighth Amendment. Could be. Now, it's going to have to come to a pretty high level in order to be unconstitutional under the Eighth Amendment. We have the Fifth District case. PLA was granted. The Supreme Court is going to hear that case. We're going to get an opinion from them. And quite frankly, whatever they say goes when that happens. Quite frankly. Yes. I mean, we like to think that it goes, although, you know, we may argue otherwise. But in this particular case, the only evidence they have is that someone paid $15,000 for his truck. And what the offense is, is admittedly driving the truck to Peoria to get fencing. And he told the police officer they were going to get high. He knew they were going to buy some drugs. They got the drugs. There's evidence in the truck. The syringes are in the truck where they had injected the heroin that they got. There was no heroin left. It was in their systems. And when they found the truck in an intersection, engine running, these two guys are pretty much passed out in the truck. Everything dealing with that heroin and the procurement of that heroin, the ingestion of that heroin was in the truck. Well, I guess, on the Eighth Amendment, so every time, so if the police stop a kid that goes out and buys a downed bag of grass, they take his Audi? I'm sure they'll try. But under that argument, I would find that a bit prominent. I'm not a big fan of this forfeiture statute, and you may not be either, but the legislator called me to ask me my opinion when they drafted this stuff. But there seems to be a proportionality to it. You can't go by the value of the vehicle alone. You can't go by any offense with which a defendant is charged alone. There are several factors to look at. But if we're talking about a bag of grass that's worth less than $100 and an Audi, that seems to me to be disproportionate and would probably be found to be a violation. In this case, we have a $15,000 truck, which quite clearly, and I don't know. And a DUI, and I don't know how much what this heroin costs, but we know one of the reasons heroin is making a comeback is because it's cheap. I think the focus here is the driving under the influence. The reason behind the forfeiture is to dissuade anyone from using a vehicle under these circumstances because they're going to lose the vehicle. Well, and that was the reason behind the death penalty, too, was to dissuade people from killing people because they said if you do, we'll kill you. And they found that even though the intent is to dissuade somebody from doing something, the courts filed other courts. The death penalty was a bad idea. It probably was a bad idea for a lot of different reasons, but I don't know that the stated reason of trying to keep people from offending, committing capital murders, I don't think that that was really truthful. I think the reason for the death penalty was retribution. Well, could the legislature say we want to dissuade DUIs, right? Could the legislature say, hey, you're over .08, and now there's a move to make it .05. You're over .08. Now the rest of the UI, they've taken your alley. They could. Yeah, they could say that. And speaking of the legislature, is this new legislation that I guess went into effect the 1st of January, is it substantive and do you think it is retroactive? No, I don't think it will be. I don't know how it could be. Okay. Two minutes, please. There's something else on this Eighth Amendment thing. I know there was. Well, let me ask you. This Harley-Davidson case we're waiting for the Supreme Court to get around and decide it. What effect do you think that decision would have on the case before us today? Well, you're going to have to guess as to why they granted PLA, aren't you? They've already granted it. They've already argued it. I think they've argued it, but there's no decision on it. Yeah, so it's coming. Right, right. It's coming. Now, if the Fifth District said there was no violation or that there was a violation of the Eighth Amendment and that the wife who was on the motorcycle actually owned the motorcycle and it was worth $35,000, that was really a violation of the Eighth Amendment. I don't think that's going to be held up. I don't think our Supreme Court might forfeiture statute, but I don't think they're going to go that far. I could be wrong. Well, regardless, whatever they do, do you think that the facts of that case, there's enough similarity that whatever decision they render might be instructive to us in disposing of this case? Well, the only thing that's going to prohibit that is the fact that, in that case, the person seeking reversal of the forfeiture actually owned the vehicle, and in this case, the person seeking reversal of the forfeiture didn't. So. Thank you. Counsel. Your Honors, very briefly, appended to the motion that was filed for release and judgment was not a newspaper ad, but, in fact, were printouts from Kelly Blue Book and Edmonds, which are relied upon by attorneys, car salesmen, car dealers, insurance companies, banks, and et cetera that establish the typical value of vehicles both new and used. So I wanted to clarify that, and I believe the value was not disputed by the state. It was actually agreed to by the state, as was the fact that Michael Shellen was the title holder in this case. The fact that there was not formal evidence, documentary or otherwise presented, was obviated by the agreement that we had in the trial court. Therefore, we did not necessarily concentrate upon those issues. Was there a stipulation? There was a stipulation that was entered into, as I recall, regarding the facilitation of the vehicle and how the vehicle was used. However, it was, I don't know if there was a formal stipulation, but it was certainly understood by all parties, and it was mentioned to the judge such that she found that he was, in fact, the title holder. Well, what about the value? Where was that in the record? Well, it's in her decision, and I don't know if it was captured in the record, but the judge did find, Judge Gorman, that is, that Michael Shellen was, in fact, the record title holder in this case. It was on the record title. We're talking about the stuff about $41,000. Oh, that was never disputed again. There was no stipulation to that, but the states indicated, at least informally, that that was not the issue that they were considering whatsoever. No, I can't tell you that there was actually formal evidence or a formal stipulation to that effect. So there is no stipulation to that effect? There is not a formal stipulation, no. So that wasn't written in evidence? Well, it was detached, appended, and never disputed. So I would argue there is certainly no waiver issue there on the part of the state. Is that a legal principle? I believe it is. If there's no offer of evidence, does the state have to object to evidence where there's no formal offer of the evidence? That I'm not sure, to be honest with you. Let's say for the sake of our Eighth Amendment discussion today that the Kelly Blue Book and the Edmonds was not sufficiently memorialized before the trial court. Let's say that the court relies upon the fact that this was a $15,000 purchase for this 2014 GMC Sierra vehicle. But when you look at the disfavoring of taking a property under circumstances such as this, there still is an Eighth Amendment violation here. That's a lot of money compared to a misdemeanor situation. No matter what the Supreme Court does in that Harley-Davidson case, keep in mind that there was at least one felony charge in that situation, none in this situation. And when you're looking at, again, forfeitures are disfavored under the law. Yes, John Fodor went to the Peoria Police Department and attempted to get the vehicle back, obviously because he thought he was responsible for getting the vehicle into the situation where it was seized. But I would submit to this court that there are more than sufficient grounds here to deny the forfeiture, to overturn the decision, not necessarily based upon the principle or the precedence of the Harley case, but based upon the Eighth Amendment. And I don't think the Supreme Court, we're speculating as to what they are going to do, but I think the facts in that case are far more egregious than the facts in the present case that we have before us. If the trial court didn't find the credibility findings, didn't find the testimony of your client credible, how would you have standing to get the vehicle back? Well, I think because of the fact it was established, at least the trial court found that Michael Shellen was the owner, and therefore had standing. Somebody has to have standing to get the vehicle back. Fodor was not the record title holder, so he couldn't be in his name. Michael Shellen was the only one that could assert that. So neither Mr. Fodor or Mr. Shellen provides a credible explanation for the reason the car is entitled in Shellen's name, right? Correct. But I do believe she did find that Shellen was, I think that Shellen was the title holder. Why he was, I think, is what the court was alluding to in that order. Right. I don't think the why is as important as the fact that he was, this was titled in his name as the court found. Yeah, it's titled in Shellen's name, but then they found that it didn't matter because, so the court found that it just might be forfeited because it was sort of fraudulent, right? Even if it was Fodor's vehicle, the Eighth Amendment, I believe, still applies in this situation. But no matter what, the testimony was, even though the judge found their testimony not reliable, this was Shellen's only vehicle. He did use this vehicle from time to time. On the day in question when Fodor used this vehicle, he did request permission from Shellen to use it to go pick up his fencing materials, which he, in fact, did pick up. You see what my problem is, I don't get the connection. The judge, even though supposedly this mysterious thing might have been titled in some place, and no title thing was ever presented, but the court found that it was subject to forfeiture, correct? Correct. The purposes weren't credible, correct? Correct. But the court did find, irrespective of that credibility finding, that the vehicle was actually in the name of Shellen. So we know that as we sit here today. I think the court was like, why was it in his name as opposed to Fodor's? That's where the credibility issue came into play. Why would Fodor have put it into his name? And I don't think she was satisfied with the why, but I do think she was satisfied it was, in fact, in Shellen's name. Thank you, counsel. Thank you. Thank you very much. Court, we'll take a break for panel change. We'll take this case under advice.